IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-316-CR


NO. 3-92-317-CR


AND


NO. 3-92-318-CR




DUANE JOHN SHAW, JR.,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT



NOS. 7533, 7534 & 7535, HONORABLE OLIVER S. KITZMAN, JUDGE PRESIDING



 




 These are appeals from judgments of conviction for attempted capital murder,
aggravated kidnapping, and aggravated sexual assault. The convictions were obtained in a
consolidated trial before a jury.

 Appellant in two points of error asserts he did not receive effective assistance of
counsel. He argues that, even though the issues were raised, trial counsel failed to request jury
instructions on duress and on accomplice witness testimony. The three authorities upon which
he relies are: Strickland v. Washington, 466 U.S. 668 (1984); Vasquez v. State, 830 S.W.2d 948
(Tex. Crim. App. 1992); and Robinson v. State, 665 S.W.2d 826 (Tex. App.--Austin 1984, pet.
ref'd). We will affirm the judgments.

 We first give a brief summary of the evidence, then we will consider the evidence
in more detail as it relates to appellant's points of error. The twenty-one year old woman who
was the victim of these criminal offenses was kidnapped at about 7:00 p.m. on a Sunday evening
in Bexar County. She was sexually assaulted in a motel, and taken to Fayette County. There she
was twice sexually assaulted, stabbed in the neck, and left for dead beside a country road, about
ten and one-half hours after she had been abducted. Appellant and his codefendant Larry Linares
were arrested in Harris County Monday morning. They were in the victim's car, and they were
in possession of some of her property, including her wallet and credit cards.

 At his trial, appellant testified that throughout the course of the criminal episode
Larry Linares compelled him to participate in the offenses. Larry Linares, he said, threatened to
kill or do serious bodily harm to him or to the victim if he did not participate in the criminal
offenses. Appellant testified he attempted a sex act with the victim in Bexar County because
Linares threatened to take his life if he refused to do so, and that if he attempted to escape Linares
said he would injure the victim. He also related that when he first saw the victim, she was
partially clad in her car which Linares was driving. When appellant first saw her, Linares held
a knife close to the appellant's body. Appellant testified that when he attempted to free the victim
at the motel Linares threatened him with death. He also said that while Linares sexually assaulted
the victim in the car and on the road in Fayette County, Linares held the knife on the victim and
threatened to kill her if appellant ran or failed to cooperate.

 The victim testified to a quite different version of the facts. She related that the
appellant actively participated in the criminal acts committed against her. Her testimony will be
summarized. On a Sunday evening she was shopping at a store in Leon Valley, a suburb of San
Antonio. She left the store and while walking to her car on the parking lot she saw the appellant
and Larry Linares, neither of whom she knew, sitting near her car. When she unlocked and
opened her car door, the two men put a knife to her neck, threw her into her car, took her car
keys and drove to an automatic teller machine. They removed the money from her purse and
withdrew twenty dollars which was all the money they could get from her account. 

 The men then drove to a motel where appellant obtained a room for them. They
took her to the room and made her remove her clothes. Using duct tape they tied her hands to
the bed posts. The men then injected themselves with a needle. Appellant wrapped her face with
duct tape, but he "left a little space on [her] eye." She saw the appellant get on top of her. She
testified appellant "raped me until he climaxed all over me. And then Linares let go of my head
and he raped me." She was then ordered to dress. They got into the car and drove for a "long
time" leaving the Interstate Highway in Fayette County. They drove to the side of a country road
where the appellant helped pull her from the car's small rear compartment to the front of the car. 
Appellant held a knife on her while Linares sexually assaulted her. She was then ordered out of
the car where Linares again sexually assaulted her. With her hands tied and clad only in a shirt,
she was forced to the ground. Appellant put a towel around her neck and stabbed her in the neck. 
The men drove away in her car leaving her by the side of the road. She managed to get to a farm
house where she was taken in and given aid.

 On cross-examination she was asked whether one of the men was "calling the shots
and the other one following them?" She replied that while at the motel, appellant told her he
didn't have a criminal record and if he were found there with her they wouldn't do anything to
him. He said that since Linares had a criminal record he was going to let Linares leave. When
she was asked what seemed to be the relationship between the appellant and Linares, she said: 
"They were buddies. They were friends . . . they seemed to be having a ball."

 Larry Linares in his brief testimony corroborated the victim's testimony that it was
the appellant who cut the victim's throat, and testified that it was his and appellant's original intent
to "just get [her] car and go to Florida." 

 Appellant's four page pre-trial statement was admitted in evidence for the jury's
consideration. Although appellant, in his statement, gave himself a subordinate part in the
commission of the crimes, he did not say that Linares compelled him to take part in any of the
criminal activity. He did not say that Linares threatened him in any way, nor that Linares
threatened to harm the victim if appellant did not participate in the criminal activity. There is
nothing in his statement to indicate he was acting under duress.

 Appellant starts his statement by saying it concerns "a girl that Larry Linares and
I kidnapped and raped in San Antonio." We quote part of appellant's statement:



We saw a white Honda CRX drive into the parking lot. It was a new one, a 1991
. . . we saw a female get out. She was by herself. Larry said thats [sic] an easy
car to get. . . . I parked behind her car . . . . We got out and were sitting on the
hood of my car. Larry pushed the girl over to the front passenger side and he
crawled in the same door and held her down. I then got behind the wheel and
grabbed the keys and started the car . . . . Larry told me about the El Camino
Motel and he told me how to get there. I left Larry and the girl in the car and I
went in the office and I rented room # 30. . . . I drove around to the back of the
motel . . . because the car would be kind of hidden from the street . . . . We were
there about 30 or 45 minutes . . . . Larry then ask me to go outside and keep my
eye on things. I went out and then walked down to a Chevron gas station, about
4 or 5 blocks . . . and got me cigarettes and a Dr. Pepper. I was gone about 20
or 30 minutes . . . . Larry had sex with her for about 4 or 5 minutes . . . . Larry
then told me to go ahead and get me some . . . . I dropped my pants down and I
got on top of her and I had sex with her. . . . I did put my penis in her vagina. .
. . I went back out side and just sat on the steps outside . . . . We decided to leave
. . . I drove onto I-10 and had gone maybe 100 miles when Larry told me to get
off the highway and turn left on a country road. We drove about 2 miles. . . . and
stopped. . . . Larry then told her to lie face down on the grass at the side of the
road. At that time, I think Larry stabbed her. I didn't actually see this but he told
me he had slit her throat and stabbed her in the back. . . . After we got to
Houston, we drove through a couple of malls looking for some purses to steal . .
. we cruised in front of a Target store and I saw a lady walk with a purse. As
Larry drove by, I reached out and I snatched her purse.



 A convicted defendant's claim that counsel's assistance was so defective as to
require reversal of conviction has two components. First, the defendant must show that counsel's
performance was deficient. This requires showing that counsel made errors so serious that
counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. 
Second, the defendant must show that the deficient performance prejudiced the defense. This
requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial,
a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that
the conviction resulted from a breakdown in the adversary process that renders the result
unreliable. Strickland v. Washington, 466 U.S. 668, 687 (1984). The Strickland test was adopted
in this state in Hernandez v. State, 726 S.W.2d 53 (Tex. Crim. App. 1986); see O'Hara v. State,
837 S.W.2d 139 (Tex. App.--Austin 1992, no pet.).

 Justice O'Connor speaking for the majority, further explained that although the
performance component of an ineffectiveness claim had been discussed prior to the prejudice
component, there is no reason for a court deciding an ineffective assistance claim to approach the
inquiry in the same order or even to address both components of the inquiry if the defendant
makes an insufficient showing on one. In particular, a court need not determine whether counsel's
performance was deficient before examining the prejudice suffered by the defendant as a result
of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's
performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of
sufficient prejudice, which will often be so, that course should be followed. Strickland, 466 U.S.
at 697.

 It is the appellant's burden to prove an ineffective assistance claim. Id. at 696;
Moore v. State, 694 S.W.2d 528 (Tex. Crim. App. 1985); O'Hara, 837 at 143.

 When raised by the evidence and timely requested, a defendant is entitled to a jury
instruction on the affirmative defense of duress if he engaged in the proscribed conduct because
he was compelled to do so by threat of imminent death or serious bodily injury to himself or
another. Compulsion exists only if the force or threat of force would render a person of
reasonable firmness incapable of resisting the pressure. This defense is not available to a
defendant if he intentionally, knowingly, or recklessly placed himself in a situation in which it was
probable that he would be subject to compulsion. Tex. Penal Code Ann. § 8.05 (West 1974).

 In assessing the record we must speculate on why counsel did not request a jury
instruction on duress. We have no evidence bearing on counsel's decision not to request a charge
on duress. This was not an issue on the motion for new trial, and evidence which might be
adduced in a post-conviction habeas corpus hearing is not before us. See Vasquez v. State, 830
S.W.2d 948, 951 (Tex. Crim. App. 1992) (Benavides, J., dissenting, joined by McCormick, P.J.,
and White, J.).

 Appellant has artfully marshalled the evidence and forcefully argued on appeal that
trial counsel should have recognized that appellant's testimony sufficiently raised the defensive
issue of duress. This argument concerns the performance component of the Strickland standard. 
However, appellant almost completely fails to grapple with the prejudice component of the
Strickland standard. We will use Justice O'Connor's suggestion and decide the prejudice
component enunciated in Strickland without deciding the performance component of the Strickland
standard. We will, therefore, assume without deciding that counsel erred in his failure to request
a jury instruction on duress. 

 In determining whether counsel's error resulted in prejudice, the defendant must
show that there is a reasonable probability that but for counsel's unprofessional errors, the result
of the proceeding would have been different. A reasonable probability is a probability sufficient
to undermine confidence in the outcome. In making the determination whether specified errors
resulted in required prejudice a court should presume that the jury acted according to law. 
Strickland, 466 U.S. at 694. Assessment of prejudice should proceed on the assumption that the
decision maker is reasonably, conscientiously, and impartially applying the standards that govern
the decision. When a defendant challenges a conviction, the question is whether there is a
reasonable probability that absent the errors, the factfinder would have had a reasonable doubt
respecting guilt. In making this determination, a court hearing the ineffectiveness claim must
consider the totality of the evidence before the judge or jury. A verdict or conclusion only weakly
supported by the record is more likely to have been affected by the errors than one with
overwhelming record support. Taking the unaffected findings as a given, and taking due account
of the effect of the errors on the remaining findings, a court making the prejudice inquiry must
ask if the defendant has met the burden of showing that the decision reached would reasonably
likely have been different absent the errors. Strickland, 466 U.S. at 696.

 Appellant was charged with three serious felony offenses, and trial counsel faced
a difficult task in defending him. The young victim of these deplorable offenses was an appealing
witness, and her suffering from these offenses would evoke sympathy. Her testimony is positive,
clear, and convincing. Available circumstantial evidence corroborates her testimony, such as
appellant's checking into room 30 of the El Camino Motel, and appellant and Linares' possession
of appellant's car and property. Appellant's statement, although giving himself the lesser role in
the commission of the offenses implicated him in each of the offenses at least as a party. None
of the evidence other than appellant's own testimony suggested that he was acting under duress. 
Appellant makes no other claim and we detect nothing else in the record which would point to trial
counsel as being ineffective. We have reviewed the trial evidence in this opinion. Appellant's
trial testimony bearing on the issue of duress is at odds with his pretrial statement. Moreover,
appellant's self-serving trial testimony concerning duress is contrary to that of the other witnesses,
including the convincing testimony of the victim.

 We conclude in applying the Strickland prejudice standard that the appellant has
not met his burden of showing that the decision reached by the jury would reasonably likely have
been different if it had been instructed on the issue of duress. Given the circumstances of this case
we feel comfortable in concluding that even if the jury had been instructed on the defense of
duress it would have reached a verdict of guilty. In coming to this conclusion, we have
considered the totality of the evidence before the jury, applying the Strickland standard to the facts
of this case. We hold that counsel's failure to request a jury instruction on duress is not sufficient
to undermine confidence in the outcome of appellant's trial. Appellant's point of error number
one is overruled.

 When raised by the evidence and timely requested, a defendant is entitled to a jury
instruction that a conviction cannot be had upon the testimony of an accomplice witness unless
corroborated by other evidence tending to connect the defendant with the offense committed; and
that the corroboration is not sufficient if it merely shows the commission of the offense. Tex.
Code Crim. Proc. Ann. art. 38.14 (West 1979).

 The failure to request a jury instruction on accomplice witness testimony in some
circumstances may be ineffective assistance of counsel. See Ex parte Zepeda, 819 S.W.2d 874
(Tex. Crim. App. 1991). In other circumstances it may not be. See Robinson v. State, 665
S.W.2d 826 (Tex. App.--Austin 1984, pet. ref'd). In Zepeda, aside from the accomplice witness
testimony, none of the other evidence tended to connect Zepeda to the commission of the murder. 
 The court there said, given the state of the evidence which depended heavily on the accomplice
testimony, counsel should have requested an instruction on accomplice witness testimony. The
accomplice testimony in Zepeda was essential to the State's case. Furthermore, that court said
had the jury been informed that it could not convict Zepeda without corroboration of the testimony
of accomplice witnesses, in light of the remaining evidence presented, there is a reasonable
probability a rational jury would not have convicted Zepeda. Counsel's failure to request an
instruction on the law of accomplice testimony constituted ineffective assistance of counsel
according to the standard set forth in Strickland. 

 In Robinson, in which the witness was an accomplice as a matter of law, this Court
characterized counsel's failure to request jury instructions pursuant to article 38.14 as a "glaring
error." However, since evidence the same as that of the accomplice's testimony was adduced
through the testimony of non-accomplices, and the appellant's guilt was overwhelming, the
appellant was not deprived of ineffective assistance of counsel.

 In this case the accomplice witness' direct testimony was very brief, covering only
two pages of the statement of facts. He testified that it was the appellant who cut the victim's
throat. The victim herself gave direct and positive testimony that it was the appellant and not
Linares who cut her throat. She was steadfast in her testimony under rigid cross-examination. 
The facts and circumstances of this case are much more like those in Robinson than those in
Zepeda. The appellant was connected to the crime by positive eye witness testimony, as in
Robinson. We conclude that in the circumstances of this case, counsel's failure to request an
instruction on accomplice witness testimony was not such an error that provides a reasonable
probability that, but for the error, the result of the proceeding would have been different. There
being no reasonable probability under the Strickland standard, that the result of the trial would
have been different if the omitted instruction had been submitted to the jury, the error is not
sufficient to undermine confidence in the outcome of the trial. Under the Strickland standard,
appellant has failed to show he received ineffective assistance of counsel because counsel failed
to request a jury instruction on accomplice witness testimony. Point of error number two is
overruled.

 We hold that in the circumstances of this case, considering the totality of the
evidence before the jury, appellant did not receive ineffective assistance of counsel, even though
counsel failed to request jury instructions on duress and accomplice witness testimony.

 The judgments of conviction are affirmed.



 

 Carl E. F. Dally, Judge

Before Justices Aboussie, Jones and Dally*

Affirmed on All Causes

Filed: February 23, 1994

Publish
















* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).