# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-99-00816-CR

**Adam Biegel, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. 0990020, HONORABLE BOB PERKINS, JUDGE PRESIDING

Appellant Adam Biegel was convicted of capital murder, a murder committed in the course of committing robbery. *See* Tex. Penal Code Ann. § 19.03(a)(2) (West 1994). The State did not seek the death penalty; therefore, appellant's punishment is life imprisonment. *See id.* § 12.31(b). On appeal, appellant asserts in six points of error that he did not receive effective assistance of trial counsel. We will affirm the judgment.

We summarize the evidence. Codefendant Tammy Jo Fox, a topless cabaret dancer, met the victim Lonnie Greenwood at the club where she worked about eighteen months before he was murdered. After they first met, Fox and the victim on several occasions went to various places where she performed private dances and they engaged in sexual acts. About one month before the murder, Fox began living with and had a sexual relationship with appellant, who was a former employee of the victim. Fox and appellant lived with Fox's mother and stepfather in an apartment complex where Fox's stepfather was a security guard.

Appellant and Fox knew that the victim customarily carried large sums of cash. Appellant and Fox, in concert with Fox's mother and stepfather, conspired to rob the victim. To accomplish the robbery, Fox lured the victim to a vacant apartment for a sexual tryst. Fox's stepfather furnished a key to a vacant apartment and furnished appellant a hammer and a knife with which to attack the victim. Although appellant planned to use a nylon stocking to cover his face and hide his identity, Fox did not remember seeing appellant use the stocking for that purpose. According to their plan, appellant concealed himself in the bathroom of the apartment. Appellant planned to strike the victim on the head with the hammer, and if necessary, appellant was going to "knife" the victim to obtain his wallet. The lights were not on in the apartment. When Fox led the victim past appellant's hiding place and signaled appellant, she continued down the hallway into a bedroom. Fox claims that she did not see appellant attack the victim. However, Fox, who testified after being granted use immunity, testified that she heard the victim say, "Do you just want my wallet?" and heard appellant respond "yes." Fox also heard the victim say, "You don't have to cut me, why are you cutting me?"

After his attack on the victim, appellant ran out onto the balcony where he threw the knife away, stuffed the victim's wallet into the waist band of his trousers, and jumped into the alley behind the apartment. Fox followed appellant back to her stepfather's apartment where Fox's mother let them in through a bedroom window. Fox and her mother discovered that there was no money in the victim's wallet. Appellant threw the wallet through a window. Appellant told Fox he had stabbed the victim more than twenty times.

The wounded victim was able to get to his car in the parking lot and place a 911 call with his cell phone. Emergency personnel and police were soon on the scene. The victim told the

officers he could only identify his assailant as a white man. He was transported to an emergency room; he had a bruise and cut on his head and three stab wounds. The fatal stab wound caused injury to several of the victim's organs and excessive bleeding. In an attempt to stop the bleeding and save his life, physicians surgically removed his spleen and one kidney. Efforts to save the victim's life were unsuccessful, and he died several days after he was stabbed.

The police found a knife with blood on it in the alley behind the apartments. The victim's wallet was not found, but his hunting and fishing license and other contents of his wallet were found behind the apartments. DNA evidence showed the victim's blood was on clothes that had been worn by appellant and Fox and on a rope bracelet worn by appellant.

In his first point of error, appellant insists that his trial counsel was ineffective. Appellant contends that counsel was ineffective because he failed to request a jury instruction on the lesser included offense of felony murder. To establish his claim that trial counsel's performance was deficient for failing to request a jury instruction, appellant must show that he was entitled to the instruction on the lesser included offense of felony murder. *Cardenas v. State*, 30 S.W.3d 384, 392 (Tex. Crim. App. 2000); *Fuentes v. State*, 991 S.W.2d 267, 272 (Tex. Crim. App. 1999).

To show ineffective assistance of counsel, appellant must show that: (1) counsel's performance was deficient, in that counsel made such serious errors that he was not functioning effectively as counsel; and (2) the deficient performance prejudiced the defense to such a degree that appellant was deprived of a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986); *Shaw v. State*, 874 S.W.2d 115, 118 (Tex. App.—Austin 1994, pet. ref'd); *O'Hara v. State*, 837 S.W.2d 139, 143 (Tex. App.—Austin 1992, pet. ref'd).

Whether a lesser offense instruction must be given is determined by a two-part test: "first, the lesser included offense must be included within the proof necessary to establish the offense charged, and, second, some evidence must exist in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense." *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993); *accord Cardenas*, 30 S.W.3d at 392; *Wolfe v. State*, 917 S.W.2d 270, 278 (Tex. Crim. App. 1996).

Here, the first part of the test is satisfied because the offense of felony murder is included within the proof necessary to establish capital murder. *See* Tex. Code Crim. Proc. Ann. art 37.09 (West 1981); *Fuentes*, 991 S.W.2d at 272; *Rousseau*, 855 S.W.2d at 673. We must determine whether the evidence in the record would allow the jury rationally to find that, if guilty, appellant was guilty only of the lesser offense of felony murder. The distinguishing element between felony murder and capital murder is intent. *See Fuentes*, 991 S.W.2d at 272; *Adanandus v. State*, 866 S.W.2d 210, 230 (Tex. Crim. App. 1993). Capital murder requires the intent to kill while felony murder requires only the intent to commit the underlying felony. *Adanandus*, 866 S.W.2d at 230; *Rousseau*, 855 S.W.2d at 673; *Creel v. State*, 754 S.W.2d 205, 211 (Tex. Crim. App. 1988).

We must decide from the evidence in the record whether the evidence would support a rational jury finding that appellant had only the intent to rob the victim and not the intent to kill him. "The possibility that initially at some point during the commission of the robbery the offender did not have the intent to cause death does not amount to evidence that the offender did not intend to cause the victims death when the murder was committed." *Rousseau*, 855 S.W.2d at 674; *accord Fuentes*, 991 S.W.2d at 273.

4

There is no direct evidence of appellant's intent to kill at the time he stabbed the victim. However, intent to kill may be inferred from circumstantial evidence. A knife is not a deadly weapon per se. *Brown v. State*, 651 S.W.2d 782, 783 n.2 (Tex. Crim. App. 1983); *Victor v. State*, 874 S.W.2d 748, 751 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). Therefore, appellant's intent to kill cannot be presumed. *See Butler v. State*, 981 S.W.2d 849, 853 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd). If the weapon used is not a deadly weapon per se, the intent to kill may be shown by the manner of its use along with the nature and extent of the wounds inflicted on the victim. *Boazman v. State*, 501 S.W.2d 894, 896 (Tex. Crim. App. 1973); *accord Hawkins v. State*, 605 S.W.2d 586, 588 (Tex. Crim. App. 1980); *Abels v. State*, 489 S.W.2d 910, 913 (Tex. Crim. App. 1973); *Lewis v. State*, 486 S.W.2d 104, 106 (Tex. Crim. App. 1972); *Martinez v. State*, 699 S.W.2d 910, 913 (Tex. App.—Amarillo 1985, no pet.).

The knife used was admitted in evidence for the jury's inspection and consideration. The seriousness and nature of the fatal stab wound was explained by expert testimony. The wound inflicted on the victim caused extensive internal bleeding, required the surgical removal of his spleen and a kidney, and ultimately caused the victim's death. In addition, there is other circumstantial evidence to support a rational finding that appellant stabbed the victim with the intent to kill him. There is evidence of appellant's animus and hatred of the victim. The appellant, who had previously been employed by the victim, had been "fired" by the victim. The victim had an ongoing sexual relationship with Fox that was longer than appellant's recent sexual relationship with her. Fox, in her testimony, affirmed that appellant's animosity toward the victim was obvious to her. Appellant bragged to Fox that he had stabbed the victim more than twenty times. Furthermore, evidence that

5

the victim was willing to give up his wallet without being "cut" shows that appellant's stabbing of the victim was unnecessary, if robbery was appellant's only intent.

Because the evidence would not allow a rational finding that, if guilty, appellant was guilty only of the lesser offense of felony murder, a jury instruction on the lesser offense was not warranted. Appellant has failed to demonstrate that trial counsel was ineffective because of his failure to request a felony murder instruction. Appellant's first point of error is overruled.

In his second point of error, appellant asserts that: "The decision by trial counsel to request and endorse an instruction from the court on the offense of aggravated robbery in lieu of an instruction on the offense of felony murder constituted ineffective assistance of counsel and denied appellant a fair trial." We have held that appellant was not entitled to a jury instruction on felony murder. On appeal, appellant argues and we agree that appellant was not entitled to the lesser included offense instruction on aggravated robbery. However, the giving of the jury instruction on aggravated robbery was potentially beneficial to appellant; it gave the jury an opportunity to find appellant guilty of a lesser offense. The giving of this instruction was not calculated to be harmful for appellant's defense; it was at most harmless error. Allowing without objection, or even encouraging the trial court to give this instruction, does not demonstrate ineffective assistance of counsel. Appellant's second point of error is overruled.

In his third point of error, appellant complains that "[t]he failure of trial counsel to object to the instruction from the court on causation constituted ineffective assistance of counsel and denied appellant a fair trial." The trial court, with acquiescence of trial counsel, instructed the jury: "A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly

6

sufficient to produce the result and the conduct of the defendant clearly insufficient." There was no application of the abstract charge to any facts in the case. Appellant's principle complaint is that the giving of this abstract charge confused the jury.

On appeal, the State concedes that this definitional jury instruction on causation was unnecessarily given but was harmless citing *Hughes v. State*, 897 S.W.2d 285, 297 (Tex. Crim. App. 1994). In *Hughes*, over objection and even though the evidence did not raise the issue of concurrent causation, an abstract jury instruction on concurrent causation was given. *Id*. The court held that "when an abstract charge is erroneously given on a theory of law, without specific application, to facts of the case, the overruling of an objection to the abstract charge is not error." *Id*.; *Lewis v. State*, 815 S.W.2d 560, 562 (Tex. Crim. App. 1991). Here, the failure of trial counsel to object to the unnecessary abstract charge on concurrent causation does not demonstrate ineffectiveness of counsel. Appellant's third point of error is overruled.

Appellant has combined his argument of the fourth and fifth points of error. Appellant contends that his trial counsel's decision to share with a hostile codefendant the expert assistance of the same forensic pathologist and counsel's failure to obtain independent expert assistance to evaluate, prepare, and present defensive evidence on the issue of intent to cause death constituted ineffective assistance of counsel and denied appellant a fair trial. Appellant makes a lengthy, convoluted argument that is largely unsupported by the record and is speculative and hypothetical in nature.

We quote illustrative portions of appellant's argument.

Appellant's trial counsel . . . . never personally asked Dr. Frost to pursue any particular avenues of investigation such as whether it was possible to develop

7

evidence that someone other than appellant inflicted the stab wounds on [the victim] or whether the nature and location of the stab wounds could provide any information about the identity of the person who stabbed [the victim]. . . . Appellant's trial counsel never asked Dr. Frost to conduct any investigation or to give any advice concerning the issue of whether the nature and severity of the stab wounds gave any indication that the wounds were or were not inflicted with the intent to cause death . . . with respect to the prejudice suffered by appellant as a result of his counsel's disclosure of confidential communications with a defense expert it is difficult to pinpoint any specific way in which the error contributed to the jury's verdict in appellant's case because the prejudice is largely structural and elusive.

Trial counsel obtained the assistance of an independent expert, Dr. Randall E. Frost, a forensic pathologist. At the motion for new trial hearing, appellant's appellate counsel offered in evidence the pathologist's written report. That report stated that the victim's cause of death was a stab wound to the abdomen. This coincided with the autopsy report and the trial evidence offered by the State. The evidence is overwhelming that appellant stabbed the victim. The record shows that the stab wound was clearly sufficient to cause the victim's death, despite speculation that medical care or the lack of medical care was a concurrent cause of the victim's death. Although trial counsel and Fox's attorney both received the report of the pathologist, the record fails to show that any privileged information was shared. Appellant's speculation as to the possible use of privileged information is mere speculation unsupported by the record.

A reviewing court must "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation." *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). Appellant has failed to overcome the strong presumption that trial counsel was acting effectively at all times. *See Oldham v. State*, 977 S.W.2d 354, 363 (Tex. Crim. App. 1998); *Gravis v. State*, 982 S.W.2d 933, 937 (Tex. App.—Austin 1998, pet. ref'd). Appellant's fourth and fifth points of error are overruled.

8

In his sixth point of error, appellant urges that "the various errors and omissions of trial counsel cumulatively constituted ineffective assistance of counsel and denied appellant a fair trial." We have overruled appellant's various points of error in which he asserts that trial counsel was ineffective. Appellant has failed to show that there are errors and omissions that cumulatively demonstrate he was denied effective assistance of trial counsel or a fair trial. Appellant's sixth point of error is overruled.

The judgment is affirmed.

_____

Carl E. F. Dally, Justice

Before Justices Kidd, B. A. Smith and Dally[*]

Affirmed

Filed: August 30, 2001

Do Not Publish

---

[*] Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).