**STATE of Iowa, Plaintiff–Appellee,**

v.

**Eddie James WALKER, Jr., Defendant–Appellant.**

**No. 02–0817.**

Court of Appeals of Iowa.

Sept. 24, 2003.

Clemens Erdahl of Nidey, Peterson, Erdahl & Tindal, P.L.C., Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, J. Patrick White, County Attorney, and Victoria Dominguez, Assistant County Attorney, for appellee.

Heard by MAHAN, P.J., and MILLER and VAITHESWARAN, JJ.

MAHAN, P.J.

Eddie Walker Jr. appeals his conviction following a jury verdict for robbery in the first degree. Walker argues there is insufficient evidence to support the jury verdict and his trial counsel was ineffective. We affirm.

**Background Facts and Proceedings.** On October 30, 2001, Brandon Ousley was working the night shift at the Suburban Amoco convenience store in Iowa City, Iowa. Ousley's friend, Clint Reginnetter, was at the convenience store visiting with him. At approximately 1:20 a.m., Ousley and Reginnetter heard a loud thud. Two men entered the convenience store. The first man, referred to as Suspect #1 at trial, was dressed in black and carried a knife. The second man, later identified as Walker, was dressed in blue. Suspect #1 jumped over the store counter and ordered Ousley to open the safe. Walker pulled Reginnetter away from the counter by the

back of his shirt and told him to lie down on the ground. Walker stood over Reginnetter while Suspect # 1 took $1058 in cash. Once Suspect # 1 had taken the money, the two men left the store and drove away.

Officer Stephen Kivi was in the area and heard the dispatch about the robbery. He saw a vehicle matching the description of the suspects' vehicle and attempted to stop it. A high speed chase ensued. Eventually, the vehicle came to a stop when it crashed into a utility pole. Suspect # 1 jumped out of the car and fled. Walker surrendered to the police and made no attempt to escape.

Walker was charged by trial information with robbery in the first degree, aiding and abetting, in violation of Iowa Code sections 711.1, 711.2, 702.11, 703.1, and 902.12(5) (2001) (Count I); eluding or attempting to elude a pursuing law enforcement vehicle in violation of section 321.279(3)(a) (Count II); driving while barred in violation of section 321.561 (Count III); and driving while revoked in violation of section 321J.21(1) (Count IV).

At trial Walker's defense was that he had been compelled to commit the robbery by Suspect # 1. He testified Suspect # 1 was under the mistaken impression that he was in possession of a large amount of drugs. Suspect # 1 was affiliated with a gang in Davenport, Iowa, and told Walker he was responsible for determining what happened to the drugs. Walker testified Suspect # 1 told him on October 20, 2001, this was a life or death situation. Suspect # 1 informed Walker he and his associates knew where his family lived, and knew that his son was a star football player at West High School. Walker stated he understood this to be a direct threat against his family if he did not account for the drugs or the money.

On October 30, 2001, Walker stated he was at Gabe's bar in Iowa City. Suspect # 1 walked in and approached him. He told Walker they were going to drive to Davenport to speak with other gang members about the missing drugs. On their way to Davenport, Suspect # 1 suddenly turned the vehicle around and headed back toward Iowa City. Then he told Walker to drive and directed him to the Suburban Amoco convenience store. Next Suspect # 1 instructed Walker to accompany him into the store and leave the car running. As they were approaching the door to the store, Suspect # 1 told Walker to "keep the second guy off my back." Walker testified it was at this time he realized Suspect # 1 intended to rob the store. Later on cross-examination, Walker admitted that no threats were made on that night and any threats Suspect # 1 had made regarding his family had occurred ten days earlier.

On January 30, 2002, a jury returned guilty verdicts on all four counts. Walker was sentenced to concurrent twenty-five, five, two and one-year terms of imprisonment. Walker appeals his robbery conviction.

**Sufficiency of the Evidence.** We review challenges to the sufficiency of the evidence supporting a guilty verdict for correction of errors at law. *State v. Heard,* 636 N.W.2d 227, 229 (Iowa 2001). We will uphold a verdict if substantial evidence supports it. *Id.* Evidence is substantial if it would convince a rational fact finder that the defendant is guilty beyond a reasonable doubt. *Id.*

Walker alleges he was compelled by Suspect # 1 to commit the robbery offense. He relies heavily upon his own testimony, the testimony of Officer Kivi, and the testimony of Clint Reginnetter as follows:

Q. What impression did you get from the individual that was straddling you? A. It wasn't like—I think this might have been a first time, he wasn't real experienced. He kind of like he almost didn't really want to be there, his voice was kind of quavering and he was really nervous, kept like—he was real jumpy.

. . . .

Q. What was your gut feeling? What impression did you get from this individual? A. He—I thought that he like was in a bad—he was like in between a rock and a hard place, like if he didn't do this, something was going to happen. Maybe he owed money to someone or he owed a favor or something and this was pretty much his only way out.

Walker, therefore, alleges the evidence presented by the State was insufficient to overcome his defense of compulsion because he clearly generated a fact question on said defense. The defendant has the burden of generating a fact question on the defense of compulsion. *State v. Reese*, 272 N.W.2d 863, 867 (Iowa 1978); *State v. Hibdon*, 505 N.W.2d 502, 505 (Iowa Ct. App.1993). Thereafter, Iowa law is clear the State has the burden of disproving the defense of compulsion beyond a reasonable doubt.

The State argues Walker did not generate a fact question. In addition, the State alleges it met its burden and relies on the following language of our supreme court:

This requirement that the threat must be immediate and not future has been invoked in related defenses. In a case of compulsion, or duress, *State v. Clay*, 220 Iowa 1191, 1202–03, 264 N.W. 77, 83 (1935), we approved the following language, which we gleaned from several sources:

Fears of future injuries do not excuse an offense. . . . The necessity which will excuse a man for breach of law must be instant and imminent. . . .

. . . The compulsion which will excuse a criminal act, however, must be present, imminent, and impending, and of such a nature as to induce a well grounded apprehension of death or serious bodily harm if the act is not done. A threat of future injury is not enough. Such compulsion must have arisen without the negligence or fault of the person who insists upon it as a defense.

*See also* [*United States v.*] *Campbell,* 609 F.2d 922, 924 [ (8th Cir.1979) ] ("a defense of duress or coercion requires that there be an immediate threat of death or serious bodily harm . . . and it must be in a situation in which there was no opportunity to avoid the danger"); [R.]Perkins, [Criminal Law] supra, at 954 [ (2d ed.1969) ] ("It is not sufficient (for the defense of compulsion) . . . that a threat is now made relating only to the future. . . ."). Cf. 704.10, The Code (compulsion specifically requires a reasonable belief that the menace of serious injury be imminent).

*State v. Walton,*[1] 311 N.W.2d 113, 115 (Iowa 1981) (quoting *State v. Clay,* 220 Iowa 1191, 1202–03, 264 N.W. 77, 83 (1935)).

Walker, on the other hand, argues these cases predate the Code revision and are outdated. Iowa Code section 704.10, which was adopted in 1979, reads as follows:

No act, other than an act by which one intentionally or recklessly causes physi-

---

**1.** The *Walton* case actually deals with the defense of necessity. *Walton,* 311 N.W.2d at 115.

cal injury to another, is a public offense if the person so acting is compelled to do so by another's threat or menace of serious injury provided that the person reasonably believes that such injury is imminent and can be averted only by the person doing such act.

Walker contends this section uses the word "imminent" and has no requirement of "immediacy" as argued by the State.

The Iowa courts have been silent on the defense of compulsion since the criminal code revision in 1979.[2] However, federal precedent is instructive.[3] In *United States v. Jankowski*, 194 F.3d 878, 882–83 (8th Cir.1999), the Eighth Circuit Court of Appeals observed that in order to generate a fact question and establish a prima facie case, the defense of compulsion requires proof by the defendant of the following four elements:

1) defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;

2) that defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to commit a criminal act;

3) that the defendant had no reasonable, legal alternative to violating the law; and

4) that a direct causal relationship may be reasonably anticipated between the commission of the criminal act and the avoidance of the threatened harm. *Jankowski*, 194 F.3d at 883 (citing *United States v. Lomax*, 87 F.3d 959, 961 (8th Cir.1996)).

We also recognize other state courts have had an opportunity to address the issue of compulsion. We will now analyze Walker's allegation of compulsion in light of Iowa Code section 704.10, the federal precedent as set forth in *Jankowski* and *Lomax*, and the judicial pronouncements of other state courts.

■ **A. Element No. 1.** Walker alleges that the threat against him was imminent although it may not have been immediate. It is not necessary for us to specifically define the two terms under the facts of the instant case. The alleged threats occurred on October 20, 2001, whereas the robbery occurred on October 30, 2001. The threats were general in nature and not specific. We therefore hold Walker was not under a reasonable belief that the threatened harm was imminent where a period of ten days elapsed between the impending general threat and the commission of the criminal act. *See State v. Milum*, 213 Kan. 581, 516 P.2d 984, 985 (1973) (noting a threat must be imminent and not directed at some indefinite time in the future); *see also Fry v. State*, 440 N.E.2d 1133, 1135 (Ind.Ct.App.1982) (alleging threats of physical harm not imminent when made two hours before the burglary); *People v. Brown*, 68 A.D.2d 503, 417 N.Y.S.2d 966, 974 (1979) (stating defense not available

---

2. There has, however, been dicta concerning the related defense of necessity. Following the *Walton* rationale, subsequent cases indicate a necessity defense is only applied in emergency situations where the threatened harm is immediate and the threatened disaster imminent. *State v. Mattly*, 513 N.W.2d 739, 741 (Iowa 1994); *Planned Parenthood of Mid–Iowa v. Maki*, 478 N.W.2d 637, 640 (Iowa 1991); *State v. Harrison*, 473 N.W.2d 242, 243–44 (Iowa Ct.App.1991).

3. The federal defense of duress is the same as the Iowa defense of compulsion. Donald M. Zupanec, Annotation, *Coercion, Compulsion or Duress as Defense to Charge of Robbery, Larceny or Related Crime*, 1 A.L.R.4th 481, § 2(a) (1980).

where threat is not capable of immediate exercise or realization); *Anguish v. State,* 991 S.W.2d 883, 885–87 (Tex.App.1999) (holding threat against defendant and family while gun held to defendant's head does not qualify as imminent threat when made four days before robbery); *State v. Harding,* 635 P.2d 33, 35 (Utah 1981) (stating "a threat directed to some indefinite time in the future is not an imminent threat" for purposes of the defense of compulsion). Although Walker established a fact question, we conclude the State proved beyond a reasonable doubt that element one did not exist. Although our resolution of the issue under this element is dispositive, we conclude it would be instructive to address the other elements as well.

**B. Element No. 2.** This element requires that a criminal defendant not recklessly or negligently place himself in a situation where it is probable that he would be forced to commit a criminal act. Walker fails to meet the requirement of this element for two reasons. First, he was involved in the drug industry, which is fraught with danger. Second, and more importantly, Walker placed himself in danger by going to Gabe's on October 30. He recklessly, or at the very least negligently, placed himself in a dangerous situation following the general threat made to him ten days before. If Walker had not gone to the bar, he would never have been approached by Suspect # 1. *See People v. Roberson,* 335 Ill.App.3d 798, 269 Ill.Dec. 420, 780 N.E.2d 1144, 1147 (2002) (finding defendant under necessity defense must be without blame in occasioning or developing the situation); *see also People v. Humphries,* 257 Ill.App.3d 1034, 196 Ill.Dec. 407, 630 N.E.2d 104, 111 (1994) (stating in compulsion case, debt to cocaine dealer arose from defendant's own negligence or fault); *People v. Rodriquez,* 30 Ill.App.3d 118, 332 N.E.2d 194, 196 (1975) (noting defendant who asserts defense of compulsion must be without fault or negligence); *Shaw v. State,* 874 S.W.2d 115, 119 (Tex. App.1994) (holding compulsion defense not available to defendant who intentionally, knowingly, or recklessly placed himself in compulsion situation). Assuming Walker established a fact question on this issue, we nevertheless conclude the State proved beyond a reasonable doubt that element two did not exist.

**C. Element No. 3.** Walker, in order to establish a defense of compulsion, must have no reasonable legal alternative to violating the law. We conclude Walker did have a reasonable legal alternative to committing the robbery. He could have, quite simply, contacted law enforcement authorities in the ten-day interim period. The Eighth Circuit stated as follows:

> Michal could have gone to the police.... Michal's only evidence of having no reasonable legal alternative was that he had a subjective belief, based upon his father's experiences in Poland and Michal's criminal justice class in a community college, that going to the police would be futile. This subjective belief is insufficient as a matter of law to meet the *objective standard* that there must be no reasonable legal alternative to violating the law.

*Jankowski,* 194 F.3d at 883 (emphasis added); *see Anguish,* 991 S.W.2d at 887 (stating subjective belief by defendant that no law enforcement agency could protect him is irrelevant); *see also State v. Griffin,* 754 P.2d 965, 968 (Utah Ct.App.1988) (citing *State v. Ashe,* 745 P.2d 1255 (Utah 1987)) (finding defendant failed to demonstrate there were no reasonable legal alternatives to committing the crime); *State v. Amundson,* 69 Wis.2d 554, 230 N.W.2d 775, 783 (1975) (using objective-reasonableness test to determine if legal alternative available). Assuming Walker estab-

lished a fact question on this issue, we nevertheless conclude the State proved beyond a reasonable doubt that element three did not exist.

**D. Element No. 4.** This element requires that a direct causal relationship may reasonably be anticipated between the commission of the criminal act and the avoidance of the threatened harm. We conclude Walker has failed to establish a fact issue concerning this element. Walker admitted no threats were made to him on October 30, 2001. Indeed, there is no evidence of any discussion concerning prior threats on that date. Assuming Walker established a fact question on this issue, we nevertheless conclude the State proved beyond a reasonable doubt that element four did not exist.

**E. Summary.** We hereby adopt the *Jankowski* elements and apply them to the defense of compulsion as set forth in Iowa Code section 704.10. We hold that a defendant has the burden of generating a fact question on each of the four elements set out in *Jankowski*. Once a prima facie case is established, the burden rests on the State to disprove the defense of compulsion beyond a reasonable doubt. Having carefully reviewed this case and applying the elements to it, we conclude Walker's defense of compulsion must fail. The evidence was sufficient to uphold Walker's conviction on the robbery charge.

**Ineffective Assistance of Counsel.** Walker claims his trial counsel was ineffective in failing to object to the admission of the knife [4] into evidence and the State's misstatements of the law. We review such claims de novo. *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001).

Ordinarily we preserve claims of ineffective assistance of counsel raised on direct appeal for postconviction proceedings to allow full development of the facts surrounding counsel's conduct. *State v. Atley*, 564 N.W.2d 817, 833 (Iowa 1997). "Even a lawyer is entitled to his day in court, especially when his professional reputation is impugned." *State v. Coil*, 264 N.W.2d 293, 296 (Iowa 1978). We will resolve ineffective assistance of counsel claims on direct appeal when the record is adequate to decide the issue. *State v. Arne*, 579 N.W.2d 326, 329 (Iowa 1998). We conclude the record before us does not provide a sufficient basis for determining counsel's effectiveness. We therefore preserve Walker's ineffective assistance of counsel claims for possible postconviction relief proceedings.

**Affirmed.**

---

4. There was no testimony at trial suggesting the knife found in the vehicle was the knife used in the robbery. The State alleges even if this was not established at trial that the knife had "marginal relevance."