**IN THE COURT OF APPEALS OF IOWA**

No. 15-1697
Filed October 26, 2016

**IN THE INTEREST OF A.P.**
**Minor child,**

**A.P., Minor Child,**
 Appellant.

_____

Appeal from the Iowa District Court for Floyd County, Karen Kaufman Salic, District Associate Judge.

A minor child appeals his delinquency adjudication, arguing his speedy-adjudication rights were violated, the trial court erred in ruling against his affirmative defense of coercion, there was insufficient evidence, and his prosecution violated the Equal Protection Clause. **AFFIRMED.**

Mark A. Milder, of Mark A. Milder Law Firm, Waverly, for appellant.

Thomas J. Miller, Attorney General, and Katie Krickbaum, (until her withdrawal), Assistant Attorney General, for appellee State.

Considered by Potterfield, P.J., McDonald, J., and Goodhue, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**POTTERFIELD, Presiding Judge.**

**I. Background Facts and Proceedings**

In July 2013, the Charles City Police Department received a report of alleged sexual abuse. Police officers met with the complaining witness and her parents and were told A.P. had sexual intercourse with their minor child on March 28, 2013. The complaining witness described the incident as A.P. having placed his penis into her vagina for between two to five minutes. The complaining witness's parents also gave officers a condom they collected from the location of the incident; however, later testing on the condom returned as negative for the DNA of A.P. or the complaining witness.

Officers interviewed A.P. in September 2013. A.P. admitted to having sex with the complaining witness, but he disputed when it occurred. A.P. maintained the incident occurred on October 8, 2012, shortly before his fourteenth birthday.

The complaining witness stated that she remembered the incident occurring on March 28, 2013, because she wrote the date down in her diary, and it was also the day before an important family event. The complaining witness disposed of the diary, and no one apparently saw it except for the complaining witness. A.P., on the other hand, said he remembered it being October 8, 2012, because it was only a few days before his fourteenth birthday, it was during the fall season, he had been repairing a vehicle with his father and they had memorialized that date on the vehicle, and because the day stayed in his memory since it was his first sexual encounter. Under either alleged date, the complaining witness was twelve years old; A.P. was thirteen or fourteen years old.

The complaining witness wrote poems and letters to A.P. and admitted to having a "crush" on him. A.P. asserted, and the complaining witness did not deny, some of the poems and letters were written prior to the sexual incident while some were written afterward.

The complaining witness alleges A.P. walked her home one day and forced her to have sex with him in a shed off of a trail. A.P. now alleges the complaining witness pressured him into having sex with her and threatened him that if he refused her advances, she would report that he raped her. During the police investigation, A.P. did not tell officers the complaining witness threatened him.

Following the investigation, on October 28, 2013, a petition alleging A.P. had committed the delinquent act of sexual abuse in the third degree was filed. A consent decree was entered into on November 21, 2013, which set forth terms and conditions for A.P.[1]

A.P. failed to abide by the terms and conditions of the consent decree, and a motion to revoke the consent decree was filed on July 3, 2014. The juvenile court revoked the consent decree on November 20, 2014, and entered the first of two orders adjudicating A.P. delinquent on the third-degree-sexual-abuse charge on the same day. In that 2014 order, the court found A.P. "stated

---

[1] The court stated at the August 26, 2015 adjudicatory hearing, "[t]he court at the time of revocation was under the belief, as is the court's practice with consent decrees, that the child had made an admission with respect to the delinquent act as part of the granting of the consent decree. The transcript of that proceeding indicates that was not done, which is unusual, but the failure for that admission was not formally addressed with the court until [defense counsel's] motion in July."

a desire to enter a plea of guilty, and engaged in a colloquy with the court." However, apparently neither the colloquy nor the guilty plea took place.[2]

The court scheduled a disposition hearing for February 12, 2015; however, that hearing had to be continued as A.P. absconded from the shelter where he was required to stay. After A.P. was located in June 2015, the court rescheduled the disposition hearing for July 23, 2015.

On July 10, 2015, A.P. filed a request for an adjudicatory hearing, arguing the first adjudicatory order did not contain any admissions or factual findings concerning his guilt. The adjudicatory hearing was scheduled for August 26, 2015. However, on August 20, A.P. filed a motion to dismiss the petition on grounds of violation of speedy adjudication, which the court denied. At the August 26 adjudicatory hearing evidence was taken, including A.P.'s testimony regarding his coercion defense. The court issued the second adjudicatory order after the hearing, again adjudicating A.P. delinquent on the third-degree-sexual-abuse charge. At the September 24, 2015 disposition hearing, A.P. was ordered into a group home.

A.P. filed a notice of appeal on October 10, 2015.

## II. Standard of Review

Generally, we review delinquency proceedings de novo to determine whether the State proved beyond a reasonable doubt the child committed the delinquent act. *See In re A.K.*, 825 N.W.2d 46, 49 (Iowa 2013). Although we are not bound by the juvenile court's factual findings, we give them weight, especially those concerning witness credibility. *Id.* "The primary goal of juvenile

---

[2] The record before us does not include a transcript of the November 20, 2014 hearing.

proceedings is to further the best interest of the child—not to punish but instead to help and educate the child." *Id.* at 51.

**III. Discussion**

A.P. raises four issues on direct appeal. First, he claims the juvenile court abused its discretion by failing to dismiss the delinquency petition on speedy-adjudication grounds. Second, he contends the juvenile court erred when it denied A.P.'s affirmative defense. Third, he claims there is insufficient evidence to support the juvenile court's adjudication. Fourth, he avers he was denied equal protection by being charged and adjudicated delinquent for a sex act when the complaining witness was not also charged and adjudicated.

**A. Motion to Dismiss on Speedy-Adjudication Grounds**

A.P. argues the juvenile court abused its discretion when it failed to dismiss the delinquency petition on the basis that A.P. was denied his right to a speedy adjudicatory hearing.

"While our review of delinquency proceedings is generally de novo, we will review this issue for an abuse of discretion." *State v. Miller*, 637 N.W.2d 201, 204 (Iowa 2001).

"Fundamental fairness requires that juveniles have the right to speedy trial." *In re C.T.F.*, 316 N.W.2d 865, 868 (Iowa 1982). "It is the public policy of the state of Iowa that proceedings involving delinquency or child in need of assistance be concluded at the earliest possible time consistent with a fair hearing to all parties." Iowa Ct. R. 8.7.

Iowa Court rule 8.8 provides, in part:

> If a child against whom a delinquency petition has been filed has not waived the right to a speedy adjudicatory hearing, the hearing must be held within sixty days after the petition is filed or the court shall order the petition dismissed unless good cause to the contrary is shown.
> (1) Entry of a consent decree shall be deemed a waiver of the child's right to a speedy hearing.

Although the consent decree here was entered in the absence of any admissions by A.P., the rule is clear that the *entry* of the consent decree operates as a waiver of the right to speedy adjudicatory hearing. Our record demonstrates A.P. requested entry of the consent decree. The parties agree the entry of the consent decree operates as a waiver of A.P.'s right to speedy adjudication.

A failure to comply with the terms of a consent decree can result in the court treating the juvenile as though no consent decree had ever been entered. *See* Iowa Code § 232.46(5) (2013). A.P. failed to comply, and on November 20, 2014, the juvenile court revoked the consent order and entered its first adjudicatory order. A dispositional hearing was scheduled for January 29, 2015. In the interim, A.P. was ordered to a shelter pending placement in a permanent residential treatment facility after the court found his remaining in his parents' home was "contrary to the child's welfare." On December 18, 2014, A.P. ran away from the shelter. After nearly six months on the lam, A.P. was found and detained.

A.P. argues because rule 8.8 is silent with regard to the right to a speedy adjudication once the consent decree is revoked, the sixty-day window for a speedy adjudication restarted on November 20, when the court revoked the

consent decree. Sixty days after that order would be January 2015, while A.P. was on run from the shelter. A.P.'s request for an adjudicatory hearing was made almost seven months later, when he was relocated after absconding from his shelter placement.

The court denied A.P.'s motion to dismiss, explaining that rule 8.8 is silent as to the "type of event that would retrigger any right to speedy adjudication after the grant of a consent decree." The court further stated that A.P.'s running away from the shelter constituted good cause for delay in the adjudicatory hearing. On appeal, A.P. argues the State did not show good cause.

In ruling on this, the juvenile court found:

> It should be noted that the child ran away from the shelter in December 2014 and was absent for over six months following the revocation of the consent decree. There was no re-demand of speedy adjudicatory hearing, and apparently under rule or statute, no such mechanism to do so. Nonetheless the court has proceeded with setting this hearing with as much urgency as possible, given the other collateral issues of this case since the issue of lack of admission by the child being brought before the court on July 10, including the child's absence, the parents' incarceration, and availability of the counsel for a hearing.[3]

Without deciding whether the clock began to run again after the consent decree was revoked, we find good cause existed for delaying the adjudicatory hearing beyond the sixty days. *See In re N.V.N.*, No. 05-0473, 2005 WL 3299269, at *1-2 (Iowa Ct. App. Dec. 7, 2005) (finding good cause for delay in a juvenile's speedy adjudication); *see also State v. Treptow*, No. 15-1357, 2016 WL 3275930, at *3 (Iowa Ct. App. June 15, 2016) (holding defendant absconding

---

[3] In addition to this juvenile proceeding, A.P. was subject to a child-in-need-of-assistance proceeding, and his parents were incarcerated for court-order violations related to this proceeding. There is also an indication counsel had scheduling issues, though the record is unclear as to which counsel the court was referring.

was good cause for delay).  We find the juvenile court acted within the range of its discretion.

We affirm the juvenile court's denial of A.P.'s motion to dismiss.

**B.  Denial of Coercion Defense**

A.P. next contends the juvenile court erred when it found A.P. could not rely on the affirmative defense of coercion and further when it refused to admit evidence relevant to the coercion defense.  The record reveals that A.P. asserted his defense and supported it in testimony as an offer of proof, but the court found his testimony unpersuasive.  While the record does not show whether the court admitted the offer of proof, it ruled on the issue in its adjudicatory order, and we review the issue as it appears in the record.

Our review is de novo; however, we review admissibility-of-the-evidence issues for an abuse of discretion.  *See State v. Rojas*, 524 N.W.2d 659, 662 (Iowa 1994).  An abuse of discretion means on grounds or for reasons clearly untenable or unreasonable.  *See State v. Loyd*, 530 N.W.2d 708, 713 (Iowa 1995).

In defending himself against the charges, A.P. relied on the coercion defense found in Iowa Code section 704.10, which provides:

> No act, other than an act by which one intentionally or recklessly causes physical injury to another, is a public offense if the person acting is compelled to do so by another's threat or menace of serious injury, provided that the person reasonably believes that such injury is imminent and can be averted by the person doing such an act.

A.P. bases this defense upon the allegation that he only had sex with the complaining witness because the complaining witness threatened that if he did not do so, she would accuse him of raping her.

To establish the coercion defense, A.P. must present proof to generate a fact question on each of the following elements:

1.  the defendant was under an unlawful and present, imminent, and impending threat of such nature as to induce a well-grounded apprehension of death or serious bodily injury;
2.  the defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to commit a criminal act;
3.  the defendant had no reasonable, legal alternative to violating the law; and
4.  that a direct causal relationship may be reasonably anticipated between the commission of the criminal act and the avoidance of the threatened harm.

*State v. Walker*, 671 N.W.2d 30, 35 (Iowa Ct. App. 2003) (quoting *State v. Jankowski*, 194 F.3d 878, 883 (8th Cir. 1999)).

At the August 26, 2015 adjudicatory hearing, the court received testimony relating to A.P.'s coercion defense. The State objected, but the court considered the testimony as an offer of proof. However, in its order the juvenile court found A.P.'s defense was not persuasive, based upon credibility findings including A.P.'s failure to tell the investigators about the alleged coercion when he was first interviewed. Specifically, the court held, "Based on the credibility factors . . . the court does not find that such threats were made by [the complaining witness]. Further, even if they had been, threats to make an allegation of a crime do not constitute a threat or menace of serious bodily injury."[4]

---

[4] Serious injury is defined in Iowa Code section 702.18 as a disabling mental illness; bodily injury which creates a substantial risk of death, causes serious permanent

A.P. has asked this court to interpret section 702.18 and expand the definition of "threat or menace of serious bodily injury" to include injuries to a person's reputation and criminal background and the accompanying consequences. However, we are bound by the plain meaning of the words and legislature's intent. *See McGill v. Fish*, 790 N.W.2d 113, 118 (Iowa 2010) (holding "we do not search for legislative intent beyond the express language of a statute when that language is plain and the meaning is clear"). "[W]ords used in a statute have their ordinary and commonly understood meaning," and we are not at liberty to interpret them otherwise. *See id.* at 119. Thus, we must decline A.P.'s request to expand section 702.18.

We do not find the trial court abused its discretion, and we affirm on this issue.

### C. Sufficiency of the Evidence for Third-Degree Sexual Abuse

A.P. avers the facts do not support a finding he committed third-degree sexual abuse. Under Iowa Code section 709.4(2)(b), for third-degree sexual abuse the State needs to prove beyond a reasonable doubt A.P. performed a sex act with a person, not his spouse, who was either twelve or thirteen years of age at the time of the incident. A.P. maintains the State did not produce sufficient evidence and argues the juvenile court erred when it adjudicated him.

A.P.'s argument rests upon the fact A.P. was either thirteen or fourteen years old at the time of the incident whereas the complaining witness was twelve.

---

disfigurement or causes protracted loss or impairment of the function of any bodily member or organ; and any injury to a child that requires surgical repair and necessitates the administration of general anesthesia. It includes but is not limited to skull fractures, rib fractures, and metaphysical fractures of the long bones of children under the age of four years.

A.P. frames the issue as whether a consensual sex act between a person aged thirteen or fourteen and a person aged twelve is a public offense. A.P. emphasizes the dispute as to the date the incident occurred as it affects his age.

The State resists A.P.'s contention that the age issue mattered, as it avers section 709.4(2)(b) is a strict-liability offense. We agree. *See State v. Tague*, 310 N.W.2d 209, 211 (Iowa 1981) (stating "statutes regarding sex offenses are common examples of employment of strict liability intended to protect the public welfare").

The State further argues the only crucial age to be considered under section 709.4(2)(b) is that of the complaining witness. The State contends A.P.'s age at the time of the offense is irrelevant and has no bearing on whether he could be adjudicated delinquent. We reject A.P.'s argument the evidence failed to establish his age—not a material element of the crime charged. We agree with the juvenile court's finding as to the date of the offense and that A.P. was fourteen on that date.

We find sufficient evidence to support the adjudication, and we affirm.

**D.  Denial of Equal Protection**

Finally, A.P. argues section 709.4(2)(b) violates the Equal Protection Clause either on its face or as applied because he was the only person charged with the offense and not the female complaining witness.

Issues must be presented to and passed upon by the juvenile court before they can be raised on appeal. *See In re V.M.K.*, 460 N.W.2d 191, 193 (Iowa Ct. App. 1990). In closing argument A.P. raised his argument that the complaining witness should also have been charged, and the juvenile court rejected the

argument in its adjudicatory order, giving deference to the prosecutor's discretion. A.P. did not raise a constitutional challenge in the juvenile court and has failed to preserve error on this issue. We decline to consider whether the prosecution of A.P. violated the Equal Protection Clauses of the Iowa or United States Constitutions.

Based upon the foregoing, we affirm the juvenile court.

**AFFIRMED.**